IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KELLY JAEGER,<br><br>     Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>     Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER<br><br>Case No. 2:17-cv-424 BCW<br><br><br>Magistrate Judge Brooke Wells |

  This case is before the undersigned following the parties consent under Federal Rule of Civil Procedure 73.[1] Plaintiff Kelly Jaeger alleges disability beginning September 15, 2011, from neck and back problems, right-arm arthritis, and a plate and bolts in his left arm.[2] Mr. Jaeger appeared and testified at a hearing held before an Administrative Law Judge (ALJ) on October 7, 2015, in St. George, Utah.[3] Following the hearing, the ALJ concluded Mr. Jaeger was not disabled for purposes of the Social Security Act.[4] The agency's Appeals Council denied Plaintiff's request for review, rending the ALJ's decision final.[5] This appeal followed. As set forth below, the court affirms the decision of the Commissioner.

---

[1] ECF No. 15..

[2] Tr. 141-47, 161 (Tr is the record of proceedings in this case).

[3] Tr. 32-65.

[4] *See* 20 C.F.R 404.120(g).

[5] *See* 20 C.F.R. 404.981.

## BACKGROUND[6]

Plaintiff applied for disability, disability insurance benefits and supplemental security income on July 5, 2013. He alleges disability due to neck and back problems, right-arm arthritis, and a plate and bolts in his left arm.[7] In 1993, while in his late 20's, Mr. Jaeger suffered a severe head injury due to a motorcycle accident. His then fiancé who was riding with him was killed and Mr. Jaeger experienced a closed-head trauma and lost consciousness.[8] Mr. Jaeger reported using a variety of illegal substances, including methamphetamine, since about age 14. At various times throughout his life Plaintiff has spent time in prison for his involvement with manufacturing methamphetamine.[9]

From 2001 through 2009 Mr. Jaeger reported working a variety of jobs including work as a cook supervisor, laborer, grounds keeper, sign hanger and truck loader.[10] Plaintiff stopped working in September 2011 after he was laid off. Mr. Jaeger states he lacks the abilities to work due to his severe conditions.[11]

The ALJ followed the standard five-step sequential evaluation process for disability claims.[12] The ALJ found Mr. Jaeger had the severe impairments of organic mental disorder, affective disorder and substance abuse disorder.[13] At step three the ALJ found Mr. Jaeger did not meet a listing. The ALJ then determined that Plaintiff had the residual functional capacity to

---

[6] The parties fully set forth the background of this case, including the extensive medical history, in their memoranda. The court does not repeat this background in full detail. The reader desiring a more extensive history is directed to the record and briefing of the parties.

[7] Tr. 161.

[8] Tr. 352.

[9] *Id.*

[10] Tr. 162.

[11] Tr. 161.

[12] *See* 20 C.F. R. § 404.1520(a)(4); *Fisher-Ross v. Barnhart*, 431 F.3d 729 (10th Cir. 2005) (summarizing the five step process).

[13] Tr. 19.

perform a full range of work at all exertional levels with certain nonexertional limitations: "limited to performing simple tasks and instructions that can be performed in 2-hour increments and would do better with hands-on instructions. He is limited to only occasional interactions with others."[14] Given this RFC, the ALJ found Mr. Jaeger could perform past relevant work as a groundskeeper, maintenance worker and sign hanger. Additionally, Mr. Jaeger was capable of performing other jobs in the national economy. Thus, Mr. Jaeger was not disabled.[15]

## STANDARD OF REVIEW

Because the Appeals Council denied the claimant's requested review the ALJ's decision is considered the Commissioner's final decision for purposes of this appeal.[16] The court reviews the ALJ's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record.[17] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."[19] In considering claimant's appeal the court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."[20]

## DISCUSSION

On appeal Mr. Jaeger argues the ALJ erred in two aspects. First the ALJ erred in failing to properly evaluate the medial opinion evidence concerning his mental impairments, especially

---

[14] Tr. 22.

[15] Tr. 25.

[16] *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003); 20 C.F.R. § 404.981.

[17] *See Doyal*, 331 F.3d at 760; *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

[18] *Doyal* 331 F.3d at 760.

[19] *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

[20] *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

3

in the opinions from Dr. Daniel Sanderson and Dr. Ronald Houston. Second, based on this initial failure, the ALJ's residual functional capacity (RFC) assessment did not include all Plaintiffs' mental limitations in the record and thus was flawed.

## I. The ALJ's evaluation of the medical opinion evidence

An ALJ must "give consideration to all the medical opinions in the record [and] discuss the weight [she] assigns to such opinions."[21] When assessing medical opinions, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) and give good reasons for the weight she assigns to the opinion.[22] The opinions of physicians who have treated a patient over a long period are given greater weight than reports of physicians employed and paid by the government for purposes of defending against a disability claim.[23]

Plaintiff takes issue with the ALJ's analysis of the opinions of Dr. Sanderson and Dr. Houston. The Social Security Agency sent Mr. Jaeger to a consultative exam with psychologist, Dr. Sanderson in April 2014.[24] Dr. Sanderson performed a series of standardized tests that considered *inter alia* Mr. Jaeger's memory, mental status and IQ. There were no indications of malingering. Dr. Sanderson opined Mr. Jaeger's "capacity for auditory memory lies in the range of significant impairment", his capacity for immediate memory had deficits and that he would "struggle greatly with any task requiring retention of verbal instruction."[25] Dr. Sanderson further opined that "[Mr. Jaeger] may fair somewhat better with more fluid 'hands-on' instruction" but "given his cognitive profile, intellectual tasks beyond a very pedestrian level will tend to be a

---

[21] *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted).

[22] *See Watkins v. Barnhart*, 350 F.3d 1297, 131 (10th Cir. 2003).

[23] *See Broadbent v. Harris*, 698 F.2d 407, 412 (10h Cir. 1983).

[24] Tr. 348-63.

[25] Tr. 362-63.

4

challenge."[26] Dr. Sanderson noted Mr. Jaeger's "rather rapid-cycling lability of affective states"[27] and recommended a "closer look" at subtests given the unexpected inconsistencies in the testing.[28]

The ALJ gave Dr. Sanderson's mental assessment great weight noting Mr. Jaeger's struggles with "any task requiring retention of verbal instruction or any task beyond a very pedestrian level" but that he would "perform better with more fluid 'hands-on' instruction."[29]

In October 2015, Dr. Houston reviewed Dr. Sanderson's report and prison medical records.[30] Dr. Houston noted that based on the testing, "it appears Mr. Jaeger is suffering from cognitive dysfunction severe enough to preclude competitive employment, reduced to highly structured, sheltered employment situations where work is constantly supervised."[31] Dr. Houston listed some examples of real life job problems Mr. Jaeger is likely to encounter and further opined that given the past head trauma

> it is most probable that with advancing age the course of his impairment follows the emerging evidence in the literature which suggests that head trauma even mild concussions such as those that occur in sports like football, soccer, and hockey can lead to progressive mental deterioration as a result of chronic traumatic encephalopathy.[32]

Thus, "any increase in mental demands or change in environment would predictably lead to decompensation."[33] Finally, Dr. Houston noted that Mr. Jaeger "needs to be informed in no uncertain terms that continued use of drugs and alcohol is an especially bad thing for persons

---

[26] *Id.*

[27] Tr. 363.

[28] Tr. 359.

[29] Tr. 23.

[30] Tr. 460.

[31] Tr. 463.

[32] Tr. 464.

[33] *Id.*

5

with a head injury."[34] The ALJ discounted Dr. Houston's opinion giving it little weight based on the record, Mr. Jaeger's employment history and his legal history involving drugs.

Plaintiff argues the ALJ failed to incorporate Dr. Sanderson's limitations into the RFC and hypothetical given to the vocational expert. According to Plaintiff, the ALJ conflated Dr. Sanderson's statements noting that "the claimant would struggle with any task requiring retention of verbal instructions or any task beyond a very pedestrian level, but would perform better with more fluid 'hands-on' instruction."[35] Thus, the limitation to hands-on instructions was not explained in the hypothetical as an inability to process verbal instructions.

A close reading of Dr. Sanderson's opinion does not support Plaintiff's position. Dr. Sanderson did not opine that Mr. Jaeger had an inability to process verbal instructions. Rather, he stated that Plaintiff "will struggle greatly with any task requiring <u>retention</u> of verbal instruction."[36] Dr. Sanderson then provided an alternative, Mr. Jaeger would "fair somewhat better with more fluid 'hands-on' instruction."[37] The court finds no error in the ALJ's hypothetical that provided for an individual who "would be limited to simple tasks and instruction, would do better with … hands-on instructions, occasional contact with others, and tasks that can be performed in basically tow-hour increments with normal breaks, …."[38] This hypothetical accounted for Dr. Sanderson's difficulties in retention of verbal instruction.

---

[34] Tr. 465.

[35] Tr. 23.

[36] Tr. 363.

[37] *Id.*

[38] Tr. 57.

Because the record supports the ALJ's reading and interpretation of Dr. Sanderson's opinion the court need not adopt Plaintiff's alternative reading.[39]

Next, Plaintiff takes issue with the weight given to Dr. Houston's opinion arguing the ALJ "completely ignores Dr. Houston's finding that Mr. Jaeger's functional decline over this time is related to chronic traumatic encephalopathy (CTE)."[40] Once again a close reading of Dr. Houston's opinion undermines Plaintiff's position. Dr. Houston noted that "it is most probable that with advancing age the course of [Plaintiff's] impairment follows the emerging evidence in the literature which suggests that head trauma . . . can lead to progressive mental deterioration as a result of chronic traumatic encephalopathy."[41] Dr. Houston did not diagnose CTE thus the ALJ did not need to consider a CTE diagnosis. Further, Dr. Houston did not treat Mr. Jaeger over a long period of time,[42] and the ALJ discounted his opinion based on the record and Plaintiff's employment and legal history. Taken together the undersigned finds these items constitute good reasons for the weight given to Dr. Houston's opinion.

## II. The ALJ's RFC determination

Mr Jaeger argues the ALJ erred by failing to include all his established limitations in his RFC assessment. In assessing the RFC, the ALJ found Plaintiff could

> perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to performing simple tasks and instructions that can be performed in 2-hour increments and would do better with hands-on instructions. He is also limited to only occasional interaction with others.[43]

---

[39] See *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'") (quoting *Zaltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

[40] Opening brief p. 12.

[41] Tr. 464.

[42] See *Broadbent v. Harris*, 698 F.2d 407, 412 (10h Cir. 1983) (noting the difference between physicians who have treated a patient over a long period and those employed and paid for by a party).

[43] Tr. 22.

Plaintiff asserts this RFC is "basically just a limitation to unskilled work"[44] and this fails to account for his mental impairments. In support, Plaintiff cites to *Jaramillo v. Colvin*[45] where the Tenth Circuit found phrases such as "simple tasks" refers to the ability to perform unskilled work and that is inadequate to account for certain mental limitations.

*Jaramillo*, however, is not applicable here because the ALJ provided a RFC that adequately accounted for Plaintiff's mental limitations and it was not a guised attempt to limit Plaintiff to unskilled work. In explaining the RFC to the vocational expert, the ALJ provided that an individual would "be able to persist for the next two hours, so it wouldn't be a job where you would get instructions and have to keep on the same instructions for eight hours a day." The 2-hour increment limitation in the RFC accounted for Plaintiff's difficulties with the retention of verbal instructions. Therefore, the court is persuaded the instant matter is more analogous to the cases cited to by the Commissioner, *Vigil v. Colvin*[46] and *Smith v. Colvin*,[47] where the court rejected arguments that the ALJ's limitations failed to accommodate a claimant's severe mental impairments.

---

[44] Opening brief p. 14.

[45] 576 F.App'x 870, 876 (10th Cir. 2014) (unpublished).

[46] 805 F.3d 1199, 1204, 2015 WL 5672613 (10th Cir. 2015) ("There may be cases in which an ALJ's limitation to "unskilled" work does not adequately address a claimant's mental limitations. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n. 3 (10th Cir.2012) (recognizing that restrictions to unskilled jobs do not in all instances account for the effects of mental impairments). But in this case, we conclude that limiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace.");

[47] 821 F.3d 1264, 1269 (10th Cir. 2016) (concluding that the ALJ incorporated the functional limitations of the claimant through the findings).

## CONCLUSION AND ORDER

Because the correct legal standards were applied and the ALJ's factual findings are supported by substantial evidence in the record, the court AFFIRMS the decision of the Commissioner.[48] The Clerk of Court is directed to close this case.

DATED this 30 May 2018.

*signature*

Brooke C. Wells
United States Magistrate Judge

---

[48] *See Doyal*, 331 F.3d at 760; *Madrid v. Barnhart*, 447 F.3d 778, 790 (10th Cir. 2006).